# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mirjan Mohd,<br><br>                            Petitioner,<br><br>                  -v-<br><br>Kristi Noem, *Secretary of the Department of Homeland Security,*<br><br>                            Respondents. | 2:26-cv-680<br>(NJC) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

On February 6, 2026, Mr. Mohd filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition argues that the detention is unlawful for three reasons: (1) ICE's arrest of Mr. Mohd on or around January 30, 2026[1] was made without probable cause to believe that he is a noncitizen that presents a flight risk as required by 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii); (2) ICE's detention of Mr. Mohd without notice and opportunity to be heard violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution;[2] and (3) Mr. Mohd is not subject to

---

[1] The Petition states that ICE detained Mr. Mohd "[o]n or around January 30, 2025," whereas the Quizhpi Declaration states that ICE detained him "[o]n January 31, 2026." (Pet. ¶ 8; Declaration of Jonathan Quizhpi ("Quizhpi Decl.") ¶¶ 12–13, ECF No. 10-1.)

[2] While the Petition generally invokes the right to due process without specifying whether the right emanates from the Fifth or Fourteenth Amendments, the Court understands the due process claim to arise under the Fifth Amendment because the Petition names federal Respondents and challenges Mr. Mohd's detention by ICE.

mandatory detention under 8 U.S.C. § 1225. The Petition seeks a writ of habeas corpus that stays any transfer of Mr. Mohd outside of the Eastern District of New York, stays his removal, and requires Respondents to immediately release Mr. Mohd on his own recognizance. (Pet. at 3.)[3] For the reasons explained below, the Petition is GRANTED.

Respondents are federal government officials: (1) Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security ("DHS"); and (2) "Officer Montgomery," an ICE officer.[4]

Respondents argue that ICE's detention of Mr. Mohd is required under 8 U.S.C. § 1225(b)(1)(B)(ii) but provide no further explanation as to why that specific provision or even 8 U.S.C. § 1225(b)(1) ("Section 1225(b)(1)") more generally applies to Mr. Mohd. (Response to Order to Show Cause ("Opposition"), ECF No. 10 at 2.) Respondents instead rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (*Id.* at

---

[3] The Court has effectively granted the requested relief of a stay of any transfer of Mr. Mohd outside the Eastern District of New York through the issuance of a February 6, 2026 Order to Show Cause, which prohibits Respondents from transferring Mr. Mohd outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 4.) The Petition's request for a stay of removal does not make clear whether Mr. Mohd is requesting a stay of removal solely while this litigation is pending or whether he seeks a stay that would last for a longer period of time. In the event that it is the former, the Court has provided this requested relief through the Order to Show Cause, which prohibits Respondents from removing Mr. Mohd from the United States pending the resolution of this action.

[4] The Petition fails to explain Officer Montgomery's connection to this action, including whether he is employed at the Metropolitan Detention Center, where Mr. Mohd is detained, or whether he is employed at any of the other detention facilities where Mr. Mohd was previously detained, or whether he was involved in Mr. Mohd's arrest. (*See* Pet.; Quizhpi Decl. ¶¶ 13–15 (representing that ICE is currently detaining Mr. Mohd at the MDC and previously detained him in the Nassau County Correctional Center and Delaney Hall Detention Facility).)

2

3.) Respondents additionally state that they "ha[ve] no objection to the Court deciding the petition on the papers in lieu of a hearing." (*Id*. at 5.)

Respondents' assertion that Mr. Mohd is detained under Section 1225(b)(1) is incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026), and that decision is incorporated by reference in its entirety in this Order.

As explained in *Rodriguez-Acurio*, Section 1225(b)(1) governs mandatory detention for noncitizens: "(1) who are inadmissible for lack of proper entry documents or because they engaged in fraud or a willful misrepresentation of a fact on their application for admission; *and* (2) who fall within either the 'Arriving Aliens Provision' or the 'Designation Provision.'" 2025 WL 331442, at *10 (citing 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II) (emphasis in original)). The "Arriving Aliens Provision" applies to noncitizens who "[are] arriving in the United States." *Id*. at *9 (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The "Designation Provision" applies to noncitizens who "[have] not been admitted or paroled into the United States" and have "not affirmatively shown" to an immigration officer's satisfaction that they have been "physically present in the United States continuously for [a] 2-year period immediately prior to the date of the determination of inadmissibility . . . ." *Id*. (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)). Here, the parties do not contest that Mr. Mohd is inadmissible "for lack of proper entry documents." (*See* Pet. ¶ 5; Declaration of Jonathan Quizhpi ("Quizhpi Decl") ¶ 3, ECF No. 10-1.) However, Mr. Mohd does not fall under either the Arriving Aliens Provision or the Designation Provision, and therefore ICE's detention of him is not governed by Section 1225(b)(1).

The Arriving Aliens Provision does not apply because Mr. Mohd was not "arriving in the United States" at the time of his detention on or around January 30, 2026. Mr. Mohd entered the

United States nearly four years ago, on or around February 28, 2022, and has been continuously residing here ever since. (Pet. ¶ 5; Quizhpi Decl. ¶ 3.) USCIS provided him a credible fear interview on March 11, 2022. (Quizhpi Decl. ¶ 5.) On March 19, 2022, DHS paroled him into the United States for one year pursuant to 8 U.S.C. § 1182(d)(5)(A) ("Section 1182(d)(5)(A)"). (*Id*. ¶¶ 6–7.) Mr. Mohd appeared in immigration court for an individual merits hearing on December 12, 2025. (Pet. ¶ 7; Quizhpi Decl. ¶ 10.) As explained in *Rodriguez-Acurio*, the Arriving Aliens Provision does not apply to a noncitizen who, like Mr. Mohd, has been continuously residing in the United States for several years. 2025 WL 331442, at *21; *see also Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) ("Under the statutory language, if applicants are apprehended while crossing the border (whether or not at a check point), they are 'arriving' applicants under the statute, and if apprehended at some point thereafter, they are not 'arriving,' but rather 'alien[s] present in the United States who [have] not been admitted.'" (quoting 8 U.S.C. § 1225(a)(1))). Therefore, Mr. Mohd is not an "arriving alien" and Section 1225(b)(1)(A)(i) does not govern his detention, which commenced more than three years after his arrival in the United States.

Nor does the Designation Provision govern Mr. Mohd's detention. Mr. Mohd was "paroled into the United States" under Section 1182(d)(5)(A) on March 19, 2022. (Quizhpi Decl. ¶¶ 6–7; *see also* Interim Notice Authorizing Parole, ECF No. 10-2 at 5.) That parole would "automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period" unless otherwise extended or terminated by ICE. (*Id*.) The fact that Mr. Mohd was paroled into the United States precludes application of the Designation Provision, regardless of whether that parole has since expired. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *Rodriguez-Acurio*, 2025 WL 3314420, at *14–15 (concluding that "the Designation Provision

prohibits 'the expedited removal of noncitizens who have been, at any point in time, paroled into the United States" (citing *Coal. for Humane Immigrant Rts. v. Noem*, ___ F.Supp.3d ___, No. 25-cv-872, 2025 WL 2192986, at *22)). Thus, Mr. Mohd is not subject to mandatory detention pending expedited removal pursuant to the Designation Provision of Section 1225(b)(1).

Accordingly, neither the Arriving Aliens provision nor the Designation Provision of Section 1225(b)(1) requires Mr. Mohd's detention pending removal proceedings. Moreover, nothing in the record shows that ICE arrested and detained Mr. Mohd under Section 1225(b)(1) rather than Section 1226(a). (*See* Form I-200 Warrant for Arrest of Alien, ECF No. 10-2 at 14 (reflecting that ICE arrested Mr. Mohd on a warrant pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 title 8, Code of Federal Regulations," which correspond to 8 U.S.C. §§ 1226 and 1357 and 8 C.F.R. §§ 287.1–287.12, not 8 U.S.C. § 1225(b)).)

Accordingly, ICE's detention of Mr. Mohd beginning on or around January 30, 2026, is not pursuant to the mandatory detention scheme of Section 1225(b)(1),[5] but rather the

---

[5] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)") as the basis for ICE's detention of Mr. Mohd, that provision is plainly inapplicable to him. Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Rodriguez-Acurio*, 2025 WL 3314420, at *22–24. Here, Mr. Mohd is not "seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him on January 30, 2026, Mr. Mohd had been living in the interior of the United States since around 2022 and had applied for asylum.

Although the Second Circuit has not resolved this question, the vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2), which suggests that any non-citizen apprehended in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that all noncitizens who came

discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Mohd has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. (Opposition at 3; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[6]) ICE's detention of Mr. Mohd without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this

---

into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States."). The Seventh Circuit recently suggested that Section 1225(b)(2) does *not* apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[5] The Fifth Circuit recently reached the opposition conclusion. *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d __, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).

[6] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

balancing test, Respondents' detention of Mr. Mohd beginning on or around January 30, 2026 violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Mohd without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain Mr. Mohd because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on or around January 30, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Mohd without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, there is absolutely nothing in the record showing that Mr. Mohd presents a flight risk or danger to the community. Indeed, Mr. Mohd has no criminal record whatsoever, and Respondents fail to show that he has not appeared in immigration court proceedings or any ICE supervision appointments. (*See, e.g.*, DHS Form I-831 Record of Deportable/Inadmissible Alien dated January 31, 2026, ECF No. 10-2 at 23 (confirming "MOHD has no known criminal history in the United States").)

Not only does Mr. Mohd pose no safety or flight risk, nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Mohd presented a risk of danger or flight prior to ICE's arrest and detention of him on or around January 30, 2026. Rather, ICE Deportation Officer Jonathan Quizhpi sets forth hearsay that unnamed ICE officers had a

7

"consensual encounter" with Mr. Mohd "in the vicinity of Hempstead, New York" during which they "asked for identification" and conducted a records check that revealed that Mr. Mohd "was subject to a removal order with a pending appeal before the BIA . . . ." (Quizhpi Decl. ¶ 12.) Quizhpi declines to identify the source of this hearsay. (*See id*. ¶ 2 (acknowledging generally that statements in the declaration are based on "[his] review of DHS records and databases maintained in the ordinary course of business, including [his] review of DHS records for [Petitioner], consultation with [his] colleagues, and review of ICE electronic databases and records" without identifying supporting sources or records for the facts set forth in paragraph 12).) However, the face of the Form I-200 Warrant plainly identifies "East Meadow, New York"—the location of the Nassau County Correctional Center, where ICE first transported Mr. Mohd after his arrest—as the location where ICE served the warrant on Mr. Mohd, not Hempstead, where ICE officers arrested him. (ECF No. 10-2 at 14.) At no point did any DHS or ICE officer determine whether there was any change in circumstances since DHS paroled Mr. Mohd into the interior of the United States in March 2022, a determination that presumptively recognized that he poses no flight or safety risk. *See* 8 C.F.R. § 212.5(b).

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Mohd's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Mohd with no notice or opportunity to be heard violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Mohd was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section 1225(b)(1). *See Lopez Benitez v. Francis*, 795 F. Supp. 3d

475, 486 (S.D.N.Y. 2025) ("The Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation."); *Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same concerning Respondents' post-hoc invocation of Section 1226(c)).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Mohd from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Mohd is not subject to mandatory detention under Section 1225(b). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(1) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Mohd is not rendered meaningless.

## CONCLUSION

Accordingly for all of these reasons explained in this Memorandum and Order and those set forth in *Rodriguez-Acurio*, the Petition is granted. Respondents must first coordinate Mr.

Mohd's release information with his counsel and afterwards release Mr. Mohd by 12:30 p.m., tomorrow, February 10, 2026. Respondents shall confirm compliance with these directives in a filing on the docket by 2:00 p.m. on February 10, 2026. Additionally, pending the issuance of any final removal order against Mr. Mohd, Respondents are enjoined from denying Mr. Mohd bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances consistent with this Order.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Mohd the requested relief, including arguments that ICE lacked legal authority to arrest him because it did not have "probable cause to believe he is an alien" or that he is a flight risk are now moot and unnecessary to resolve. (Pet. ¶ 12.)

The Show Cause hearing scheduled for February 10, 2026 at 11:00 a.m. in the Alfonse D'Amato U.S. Courthouse is therefore adjourned. The matter is held in abeyance.

Dated: Central Islip, New York
February 9, 2026

                                         _/s/ Nusrat J. Choudhury_
                                         NUSRAT J. CHOUDHURY
                                         United States District Judge